**UNITED STATES of America, Plaintiff,**

v.

**Franklin D. COOKE and Wilbert E. Turner, Defendants.**

**Crim. No. 87–75–JRR.**

United States District Court, D. Delaware.

Nov. 12, 1987.

Charlene D. Davis, Asst. U.S. Atty., U.S. Dept. of Justice, Wilmington, Del., for plaintiff.

Thomas F. Luce and Joseph M. Bernstein, Wilmington, Del., for defendant Turner.

Sidney Balick, Wilmington, Del., for defendant Cooke.

## OPINION

ROTH, District Judge.

Defendant Wilbert Turner was indicted, along with Franklin Cooke, Secretary–Treasurer of the International Longshoremen's Association (ILA) Local 1694, on one count of embezzling, stealing, unlawfully and willfully abstracting and converting to their own use an amount in excess of $10,586, from the funds of Local 1694, in violation of 29 U.S.C. § 501(c) and 18 U.S.C. § 2. Defendant Turner is a roofer who had repaired the roof of the Local 1694 union hall. The charged violation of 29 U.S.C. § 501(c) arose from payments made to defendant Turner following the roof repairs. The defendants were indicted on July 21, 1987, and both pled not guilty to the charge at arraignment on July 29, 1987. Mr. Turner's first attorney filed motions for discovery and for severance on August 13, 1987. On September 28, 1987, a second attorney, Joseph M. Bernstein, Esquire, entered his appearance on behalf of defendant Turner. On November 5, 1987, Mr. Bernstein filed a motion for suppression of evidence, based upon a claim that the statements which appear at pages 32 and 33 of the transcript of the testimony of Mr. Turner before the Grand Jury on March 24, 1987, were obtained in violation of his Fifth Amendment right against self-incrimination. The United States Attorney opposes the motion on the grounds that there was no Fifth Amendment violation and that the motion is untimely and would prejudice the prosecution if granted in view of the fact that trial is scheduled to commence on November 18, 1987.

The Time Limits And Procedures For Achieving Prompt Disposition Of Criminal Cases, instituted under the District of Delaware Plan For Disposition of Cases In Accordance With The Speedy Trial Act of 1974, provides under Rule 5(a) that certain motions, including motions to suppress evidence, shall be filed on or before the tenth day following arraignment. Accordingly, Mr. Turner's motion to suppress should have been filed on or before August 10, 1987. Rule 5(b) provides that failure to file a motion within the time limit shall constitute waiver thereof,

> [B]ut the Court may grant relief from the waiver if it determines that:
>
> (1) Opportunity to make the motion or request did not theretofore exist,
>
> (2) Neither the defendant nor his/her counsel was aware of the grounds for such motion within the time permitted for its filing under subsection (a), or
>
> (3) Under all the circumstances, justice otherwise requires.

Defendant Turner appeared before the Grand Jury on just one occasion and the transcript of his testimony is only 33 pages long. Counsel for Mr. Turner have made no showing that they did not have an opportunity to file a timely motion to suppress or that they were not aware of the grounds for the motion within the time permitted. Indeed the strongest argument to support the lack of awareness exception

of Rule 5(b) is the very equivocal nature itself of the claimed constitutional violation.

In order to appreciate the marginal character of defendant Turner's Fifth Amendment claim, it is helpful to review the transcript of his Grand Jury testimony. Immediately after Wilbert Turner was sworn, he was advised of his rights by Charlene Davis, the Assistant United States Attorney examining him:

Q. Mr. Turner, I want to advise you of your rights. You have the right to remain silent and the right not to incriminate yourself and you have the right to have an attorney present outside to consult with if you should wish to consult with the attorney regarding any specific question that's asked you. If a question is asked you that you believe might be incriminating, you have the right to refuse to answer that question.

Do you understand that?

A. Yes.

Wilbert Turner was then questioned by Ms. Davis concerning the experience he and his brother had had generally as roofing contractors and more particularly with the job they performed in repairing the roof of the Local 1694 union hall. After discussing how they got the job, how the job was performed, and where materials for the job were obtained, Mr. Turner was asked about the cost of and payment for the new roof. He testified that: a written contract for the job was not signed; the estimated cost of the job was about $43,800; and defendant Cooke asked Mr. Turner if Local 1694 could pay $2,000 per month for the job. Because he needed the work, Mr. Turner agreed to that payment schedule without increasing the price or charging interest. After being questioned about when various parts of the job had been finished, who had worked on those parts of the job, and how the workers had been paid, defendant Turner was asked how he and his brother were paid by Local 1694. He stated that his brother, Reid Turner, picked up the checks, cashed them and gave him half of the money. When asked how many checks he and his brother received, Turner testified that he knew but would rather not answer at that time. Turner then testified that Local 1694 had paid the Turners in full for the job; the last payment, for $4,000, was received on October 6, 1986.

Wilbert Turner was next asked if the full amount paid was the estimated amount. He replied, "I'd rather not answer that question at this time." He stated that he and his brother had not split the proceeds with anyone else; the income had been reported to the IRS; he and his brother as partners had filed partnership forms; but he would rather not answer whether the proceeds had been reported as partnership income. After being questioned about his acquaintance with various members of Local 1694, including defendant Cooke, Mr. Turner was asked if he thought he had overcharged Local 1694 and if he had discussed this with defendant Cooke. Turner stated that he had not.

Following these questions by Ms. Davis, various members of the Grand Jury interrogated Mr. Turner about the cost, per square foot, of the job, the total area reroofed, and the age of the roof replaced. Ms. Davis then confirmed through her questioning that no one but Wilbert Turner and his brother had shared in the proceeds, that no payments were made to defendant Cooke in exchange for getting the contract, and that no work was ever done for Mr. Cooke on his home. Ms. Davis's next inquiry was as follows:

Q. You received full satisfaction for the price of the roof. Is that correct?

A. Yes.

Q. Did you receive anything in excess of that?

A. Beg your pardon?

Q. Did you receive money in excess of the amount that you had quoted on the estimate?

A. When I found out—I'll answer the question you asked me before—when I found out that they had overpaid me on the 10th, the 6th, the 6th, the 10th of '86, I did write them a letter stating that the roof had been paid. I realized at that time that they had overpaid me, yes.

Q. Have you paid back those amounts?

A. No, I did not.

MS. DAVIS: Any other questions? Thank you, Mr. Turner.

A GRAND JUROR: You mean they didn't want their money back, they didn't pressure you to get their money back?

THE WITNESS: I did not inform them that they had overpaid me. All I sent them was a statement that it was paid in full.

A GRAND JUROR: All right.

It is this above quoted portion of Mr. Turner's testimony which his attorneys now claim was obtained in violation of his Fifth Amendment right against self-incrimination.

Since defendant Turner's counsel have not established that they had no opportunity to file the motion to suppress within the designated time period or that they were not aware of the grounds for it during that time, we must examine the motion under Rule 5(b)(3) to determine whether under all the circumstances justice requires us to permit untimely filing of the motion. In making this review, our concern is not whether the statement is likely to establish Mr. Turner's guilt under the indictment but rather whether the statement was obtained from Mr. Turner under circumstances which demonstrate that the statement was not voluntary but was made due to "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda v. Arizona,* 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966).

The present case is not one like *Miranda,* however, where the defendant is being interrogated while in police custody. Here Mr. Turner was being questioned before the grand jury, not in custody by police. Our review of the grand jury proceedings does not reveal a coercive atmosphere which would compel self-incrimination. This is not to say that the Fifth Amendment privilege does not extend to grand jury proceedings. It is well established that it does. *United States v. Washington,* 431 U.S. 181, 186, 97 S.Ct. 1814,

1818, 52 L.Ed. 238 (1977), citing *Counselman v. Hitchcock,* 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). The Fifth Amendment also "does not automatically preclude self-incrimination, whether spontaneous or in response to questions put by government officials"—if, voluntarily made. *Ibid.* The Supreme Court held in *United States v. Washington:*

The Constitution does not prohibit every element which influences a criminal suspect to make incriminating admissions. Of course, for many witnesses the grand jury room engenders an atmosphere conducive to truth telling, for it is likely that upon being brought before such a body of neighbors and fellow citizens, and having been placed under a solemn oath to tell the truth, many witnesses feel obliged to do just that. But it does not offend the guarantees of the Fifth Amendment if in that setting a witness is more likely to tell the truth than in less solemn surroundings. The constitutional guarantee is only that the witness be not *compelled* to give self-incriminating testimony. The test is whether, considering the totality of the circumstances, the free will of the witness was overborne.

431 U.S. at 187–88, 97 S.Ct. at 1819 (citations omitted). The *Washington* case is particularly relevant here because it also involved a grand jury witness, who was later indicted, partly at least, on the basis of his grand jury testimony.

Defendant Turner argues that his statements were coerced because the Assistant United States Attorney continued to question him as to the particular subject to which he had asserted his privilege of silence and that failure to cease questioning violated his Fifth Amendment rights. *United States v. Mandujano,* 425 U.S. 564, 581, 96 S.Ct. 1768, 1778, 48 L.Ed.2d 212 (1976). Turner is referring apparently to the question of whether the full amount paid for the job was the estimate amount, to which defendant replied "I'd rather not answer that question at this time." Five pages later in the transcript, Turner is asked "did you receive money in excess of

the amount that you had quoted on the estimate?" He replied, "When I found out —I'll answer the question you asked me before ..." and then stated that he had been overpaid.

█ In view of the testimony which Turner gave freely and expressively about his roofing business in general and about the Local 1694 job in particular, we do not find that the Assistant United States Attorney continued unconstitutionally to question Mr. Turner on the small, particular area, concerning which the privilege had been asserted, when she asked the second question. We have made this determination even though to some extent the second question overlapped the first because of Turner's willingness to speak freely on so many areas about the job. Moreover, even if the two questions had been the same, in view of the overall circumstances and atmosphere of this grand jury testimony, we do not find the question was asked in a manner which coerced an involuntary response. Indeed, Mr. Turner's statement, "I'll answer the question you asked me before," demonstrates his freely made decision to respond voluntarily.

Because we find that the statements were not made under circumstances of coercion, which this Court should discourage, and because in making this review we, in fact, have found that the statements were voluntary, we do not find that justice requires that permission be granted to file an untimely motion to suppress. The motion will be denied as untimely.

An appropriate order will follow.